IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MENZIES AVIATION, INC., AND MENZIES AVIATION COLOMBIA S.A.S,** § § § § | | |
| Plaintiffs, § | | |
| § | | |
| V § | | CASE NO. 3:24-cv-00057 |
| § | | |
| **ASTROPHYSICS, INC.,** § § | | |
| Defendant. § § | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Menzies Aviation, Inc., and Menzies Aviation Colombia S.A.S, a wholly owned subsidiary of Menzies Aviation, Inc. (hereinafter collectively referred to as the "**Plaintiffs**") by their undersigned attorneys, as and for their Complaint against Astrophysics, Inc. (the "**Defendant**"), allege as follows:

### I.   THE PARTIES

1. Menzies Aviation Colombia S.A.S. ("**Menzies Colombia**") is a foreign entity that operates business in Colombia.

2. Menzies Aviation, Inc. ("**Menzies Aviation**") is the United States parent company of Menzies Colombia and the senior U.S. corporate entity carrying out the business of the Menzies Aviation enterprise in the United States and certain countries in North America and South America.

3. Menzies Aviation is a Delaware corporation with its headquarters and principal place of business in Dallas-Fort Worth, Texas ("**DFW**"). Menzies Aviation's' high-level officers, who also exercise ultimate direction of the activities of Menzies Colombia, work at the

1

DFW headquarters and direct, control, and coordinate the company's activities from DFW. Therefore, Menzies is a citizen of Delaware and Texas, or both states. 28 U.S.C. § 1332(c)(1) (for purposes of diversity of citizenship, a corporation is a citizen of every state or foreign country where it is incorporated and where it has its principal place of business); *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).

4. The Defendant is a corporation incorporated in Delaware, with its principal place of business in City of Industry, California. For purposes of diversity of citizenship, the Defendant is therefore a citizen of California.

## II. JURISDICTION AND VENUE

5. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because this matter involves a dispute between citizens of different States and a foreign entity. There is a complete diversity of citizenship in this case because the Defendant is a citizen of California, and the Plaintiffs are citizens of Texas and Colombia.

6. As set forth in greater detail herein, the amount in controversy between the parties exceeds $75,000, exclusive of interest and costs. Accordingly, this Court has subject matter jurisdiction.

7. This Court has personal jurisdiction over the Defendant because a substantial part of the underlying activities giving rise to the claims occurred in this district.

8. Venue is proper in this district under 28 U.S.C. § 1391 (b).

## III. FACTUAL BACKGROUND

9. The Menzies Aviation enterprise is one of the world's largest independent aviation support companies.

10. Menzies Aviation provides ground handling services to commercial airlines' aircraft, cargo handling services in airlines' cargo warehouses, and both aircraft fueling to airlines and fuel facilities management services to airports. Ground handling includes servicing aircraft while parked at passenger gates "above-the-wing" in the passenger terminals through passenger service personnel who assist passengers with tickets and boarding and cabin crews who clean aircraft and check security requirements between flights. It also includes "below-the-wing" work on the ramp, such as offloading and loading of baggage and cargo and guiding taxiing aircraft when they arrive.

11. For the air cargo services the company performs, Menzies Aviation is trusted to provide a reliable and secure service because of its decades of experience supported by cost-effective and smart logistics solutions. The Menzies Aviation cargo network covers 70 locations across the globe, with numerous operations within the United States and the Americas that include operations at multiple airports in Colombia.

12. Commercial cargo bound for the United States from foreign airports must comply with certain screening and other security protocols that confirm to requirements established by the Transportation Security Administration ("**TSA**"). As part of its international cargo services offered to commercial cargo carriers, Menzies performs these screenings for cargo that are ultimately loaded onto aircraft bound for destinations within the United States. It must therefore have at its disposal security screening equipment that satisfies TSA security requirements and perform security screenings using such equipment consistent with TSA-required protocols.

13. The Defendant designs, builds, and delivers security x-ray scanners that help make hidden threats visible of the type that Menzies uses to perform the cargo security screening for international cargo bound for US destinations. The Defendant is aware that the products it

3

sells must conform to TSA requirements, and actively markets its products in such a way as to alert potential business partners that the Defendant is aware its products must satisfy TSA standards and communicates to potential customers that its product offerings do in fact conform to TSA standards.

### A. CONTRACT WITH LATAM

14. The Plaintiffs entered into a contract with LATAM Airlines Group S.A. ("**LATAM**") in which Menzies Colombia was to provide ground services at airports in Colombia. Specifically, the Plaintiffs agreed to begin providing security screening services to LATAM in 2023 at José María Córdova International Airport ("**MDE**") located near Medellín, Colombia and perform TSA-compliant screening on commercial cargo that LATAM would transport from MDE to destinations with the United States.

15. LATAM is the largest airline holding company in Latin America and operates one of the largest passenger and air cargo networks in the world.

16. LATAM has been an important customer to Menzies Aviation for many years, and the business partnership between the two companies extends well beyond Latin America. Within Colombia, the Plaintiffs provide various ground handling services to LATAM at four different airports, representing more than 40,000 annual aircraft "turns" across all four locations. As a consequence, failure by Menzies Aviation to provide the expected level of service to LATAM at one operation could have significant negative consequences to the larger Menzies Aviation-LATAM business partnership.

17. Under their agreement, Menzies Colombia delivers ground handling operations at four Colombian airports representing 40,000 turns per annum across all four stations.

18. In order to deliver these operations, the Plaintiffs had to deliver the security x-ray screens.

B. **THE PURCHASE ORDER**

19. To begin performing the 2023 security screening services for cargo originating from MDE and bound for US destinations, the Plaintiffs had to acquire additional security screening equipment that conformed to TSA standards.

20. The Defendant sought to sell and deliver x-ray screens to the Plaintiffs and made commercial efforts to persuade the Plaintiffs to acquire the required security screening equipment for the MDE operation from the Defendant in lieu of acquiring it from the Defendant's competitors.

21. During early proposals between the Plaintiffs and the Defendant, the Defendant explicitly communicated that all equipment it proposed to sell to the Plaintiffs complies with TSA requirements.

22. The Defendant persuaded the Plaintiffs to purchase the necessary equipment from the Defendant, which ultimately resulted in the Plaintiffs and the Defendant entering into a purchase order (the "**Purchase Order**") in which the Defendant agreed to deliver equipment to the Plaintiffs that satisfied TSA requirements.

23. The Purchase Order, dated August 16, 2023, provided that the Defendant would manufacture and deliver x-ray screens to the Plaintiffs for use at MDE. The Defendant committed to delivery of such equipment by September 15, 2023. In exchange for such commitment, the Plaintiffs agreed to pay the Defendant a sum of over $363,000.00, and have made a deposit payment and all required installment payments as called for by the Purchase Order Agreement.

24. In addition to its marketing materials, proposal, and the Purchase Order, all of which communicated that the Defendant's products are TSA regulated and would be TSA approved, the Defendant also communicated and confirmed through email correspondence that the equipment was TSA approved and the equipment would be delivered with the hardware and software required by TSA.

C. **DEFENDANT'S REPEATED BREACHES AND CONCESSION OF FRAUD**

25. The Defendant failed to deliver the equipment on the delivery date. This failure to deliver on time put the Plaintiffs in breach of the contract with LATAM because Menzies Colombia could not begin providing the required security screening services on the date called for by the agreement between the Plaintiffs and LATAM.

26. After the Defendant failed to meet the contractually required delivery date and put the Plaintiffs in breach of the commitments owed to LATAM, the Plaintiffs communicated to the Defendant the urgency of delivering the equipment as soon as possible.

27. After multiple months of delays, the Defendant eventually delivered the equipment.

28. The Plaintiffs took the equipment provided by the Defendant and made arrangements to put it into service as part of the Plaintiffs' provision of security screening services provided to LATAM at MDE.

29. Before LATAM agreed that Menzies Colombia could begin performing the security screening services at MDE, it first exercised its right to perform an audit on the equipment provided to the Plaintiffs by the Defendant. As part of this audit, LATAM concluded that the equipment does not comply with TSA requirements and was not fit for purpose –

meaning the Plaintiffs still could not commence performing the security services at MDE and remained in breach of their obligations owed to LATAM.

30. Upon learning this from LATAM, the Plaintiffs again contacted the Defendant to alert them of the issue. In response, the Defendant confirmed not only that the equipment they delivered to the Plaintiffs had yet to secure the required approvals from TSA, but also that the Defendant knew the equipment provided to the Plaintiffs had not been cleared by TSA for its intended use despite the Defendant's repeated prior communications that its equipment satisfied and conformed to TSA requirements.

31. Because the Plaintiffs have not been able to satisfy the obligations owed to LATAM at MDE because of the Defendant's delays and failure to deliver equipment fit for purpose, LATAM has been forced to secure security screening services at MDE from another company on an emergency basis at exorbitant prices far greater than what it had anticipated paying the Plaintiffs for the same services. As a consequence, not only have the Plaintiffs been damaged by paying deposits and installment payments for insufficient equipment and lost the expected revenue and profit they would have received from LATAM for performing the security services at MDE, but the Plaintiffs have been forced to compensate LATAM for: LATAM's losses arising from the Plaintiffs' inability to perform and LATAM having to secure replacement services at far greater cost. These actual losses have already exceeded millions of dollars and will continue to mount for as long as the Plaintiffs are unable to perform their obligations owed to LATAM because of the conduct of the Defendant.

32. On January 2-3, 2024, the Defendant completed the actions necessary to bring the equipment at issue into compliance with TSA requirements, and the equipment in the Plaintiffs' possession is fit for purpose as of January 3, 2024. However, as of January 3, 2024, LATAM

has not permitted Menzies Colombia to begin performance in MDE based the Plaintiffs' previous inability to meet the obligations owed to LATAM, such that the Plaintiffs continue to suffer financial losses set forth in the foregoing paragraph and it is not clear when the Plaintiffs will be permitted to begin performance or otherwise be able to mitigate the losses caused by the Defendant's actions alleged herein. Moreover, Astrophysics has refused to compensate the Plaintiffs in any fashion to compensate the Plaintiffs for the losses they have suffered and continue to suffer as a consequence of Plaintiffs' breaches and fraudulent conduct.

33. The Defendant's breaches and deception, which have put the Plaintiffs in breach of their agreement with LATAM, has also caused significant reputational damage for the Plaintiffs and LATAM and their worldwide business relationship has deteriorated. The Menzies Aviation enterprise is currently at significant risk of failure to secure new business opportunities LATAM has been negotiating with the company at other locations in the world. Such directly foreseeable losses to the Menzies Aviation enterprise will amount to many millions of dollars annually.

## IV.     CAUSES OF ACTION
### COUNT I – BREACH OF CONTRACT

34. The Plaintiff restates and realleges the allegations contained in the preceding Paragraphs.

35. To state a claim of breach of contract, "a plaintiff must prove (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff; (3) breach by the defendant, and (4) harm to the plaintiff as a result of the breach." *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 813 (S.D. Tex. 2013).

36. The Purchase Order is a valid contract and enforceable agreement between the Plaintiffs and the Defendant to which there was a mutual meeting of the minds.

37. The Plaintiffs have performed their obligations under the Purchase Order in all material aspects.

38. On the other hand, under the terms of the Purchase Order, the Defendant was and remains obligated to deliver, on a timely basis, the equipment regulated by TSA and fit for purpose pursuant to TSA's requirements and approval processes, to Menzies Colombia.

39. The Defendant breached the Purchase Order by failing to deliver any equipment by the initial delivery date. Because the Defendant has never actually delivered the fit-for-purpose equipment, it remains in breach of its obligation to timely deliver under the Purchase Order.

40. Alternatively, the Defendant breached the Purchase Order by delivering equipment not representative of what the Purchase Order provides and that is fit for purpose as negotiated and agreed upon by the Parties.

41. Specifically, the Defendant represented that the equipment is TSA regulated and communicated its awareness that it would need to deliver and would deliver equipment approved for use under TSA requirements and with TSA approvals; thus, a reasonable person would believe that the equipment contracted for in the Purchase Order would comply with the TSA requirements.

42. However, the delivered equipment did not comply with TSA requirements and thus, were inadequate to the Plaintiffs.

43. As a result of the Defendant's breaches, the Plaintiffs have suffered and continue to suffer damages including reputational damage and loss of profits, in an amount to be proven at trial.

## COUNT II – FRAUDULENT INDUCEMENT

44. The Plaintiff restates and realleges the allegations contained in the preceding Paragraphs.

45. A fraudulent inducement claim requires a "plaintiff to prove a misrepresentation; that defendant knew the representation was false and intended to induce plaintiff to enter into the contract through that misrepresentation; that plaintiff actually relied on the misrepresentation in entering into the contract; and that plaintiff's reliance led to plaintiff to suffer an injury through entering into the contract." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012).

46. "Fraudulent inducement is actionable when the misrepresentation is a false promise of future performance made with a present intent not to perform." *ICI Constr., Inc. v. Hufcor, Inc.*, No. H-22-3347, 2023 U.S. Dist. LEXIS 37479, at *41 (S.D. Tex. Mar. 7, 2023) (citations omitted).

47. In order to induce the Plaintiffs to agree to the Purchase Order and purchase equipment from the Defendant instead of from the Defendant's competitors, the Defendant made false representations and promises set forth above. Specifically, the Defendant repeatedly communicated that they would deliver security screening equipment to the Plaintiffs that would be fit for purpose and approved for use pursuant to TSA's requirements for the shipment of cargo from international airports to United States' destinations. And, the Defendant confirmed to Menzies Colombia that they knew the equipment they delivered to the Plaintiffs pursuant to the

Purchase Order in fact did not satisfy TSA requirements and was not approved for use consistent with TSA's procedures and requirements.

48. The Defendant was aware that the Plaintiffs needed the equipment to be approved for use pursuant to TSA requirements.

49. Defendant's knowingly false representations were material because the Plaintiffs could not perform on their obligations to LATAM without security screening equipment approved for use and fit for purpose under TSA guidelines.

50. The Defendant knew those representations were false at the time that they were made because it knew that the equipment it would deliver to the Plaintiffs would not comply with the TSA requirements and not be fit for purpose.

51. The Plaintiffs had no basis to know that the Defendant's representations were false, and the Plaintiffs' reliance on the Defendant's representations were reasonable given their repeated assurances and the documentation the Defendant provided to the Plaintiffs.

52. The Defendant intended that the Plaintiffs would rely on the Defendant's false representation.

53. Because of the Plaintiffs' reliance on the Defendant's fraudulent representations, the Plaintiffs' suffered damages, including reputational damage and loss of profits, in an amount to be proven at trial.

### V.     PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for relief as follows:

1. For an order stating that (i) the Defendant breached the Purchase Order and (ii) the Defendant fraudulently induced Menzies Colombia.

2. Award the Plaintiffs damages incurred as a result of the Defendant's breach of the Purchase Order, including the recovery of actual and compensatory damages.

3. Award the Plaintiffs punitive damages in connection with the fraudulent inducement claim as a result of the Defendant's actions that were attended by circumstances of fraud.

4. Award the Plaintiffs their allowable costs, disbursements, and penalties in this action as the Court deems proper.

5. Award the Plaintiffs all reasonable attorneys' fees to the extent such may be allowable by law or contract.

6. For such other and further relief as the Court may deem just and proper.

## VI. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

DATE: JANUARY 8, 2024

Respectfully submitted,

By: /s/*Carrie B. Hoffman*
Carrie B. Hoffman
Texas Bar No. 00787701
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
choffman@foley.com

Attorneys for Plaintiffs MENZIES AVIATION, INC. and MENZIES AVIATION COLOMBIA S.A.S